## ST. GEORGE CONTRACTING CO. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.   March 17, 1911.)

1. MUNICIPAL CORPORATIONS (§ 356*)—CONTRACT FOR PUBLIC WORK—SUFFI-
CIENCY OF PERFORMANCE—PERFORMANCE BY A VOLUNTEER.

Plaintiff had a contract with a city for excavation, and between the
signing of the contract and the beginning of the work a railroad company
engaged in excavating on its property adjoining that of the city without
the consent of either party, and by mistake entered upon, excavated, and
carried about one-tenth of the excavation measurement provided by plain-
tiff's contract. *Held*, that the plaintiff might adopt this act by a volun-
teer as its own, and show it as performance; but it must adopt the act
wholly.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §
356.*]

2. CONTRACTS (§ 322*)—PERFORMANCE—SUBSTANTIAL PERFORMANCE—BURDEN
OF PROOF.

A party claiming the benefit of the doctrine of substantial performance
of a contract has the burden of showing the value of the work, or part
omitted, or the expense of supplying the omissions.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1534–1542;
Dec. Dig. § 322.*]

3. MUNICIPAL CORPORATIONS (§ 374*)—CONTRACT FOR PUBLIC WORK—SUB-
STANTIAL PERFORMANCE—EVIDENCE.

The plaintiff had a contract with the city for excavation, which pro-
vided that all top soil and hardpan should be deposited as filling back
of the completed wall, and that, should there be an excess of excavated
material, the contractor should remove it at his own expense.   After the
contract was signed, and before plaintiff began work, a railroad company
by mistake entered upon, excavated, and carried away top soil amount-
ing to about one-tenth of the measurement called for by plaintiff's con-
tract, and the city on completion of the contract refused to pay plaintiff
for this amount.   Plaintiff, in an action to recover therefor, offered no
proof that the material carried away was excess material not needed for
filling.   The evidence of the city tended to show that it had to purchase
filling to back the wall, and plaintiff's evidence tended to show that de-
fendant's damage thereby was only nominal. *Held*, that plaintiff had
not sustained the burden of proving substantial performance, and had
no case against the city.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §
374.*]

Appeal from Trial Term, Kings County.

Action by the St. George Contracting Company against the City of
New York.   From a judgment dismissing its complaint upon the mer-
its, plaintiff appeals.   Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and
RICH, JJ.

Seldon Bacon (Saul S. Myers, on the brief), for appellant.

Clarence L. Barber (Theodore Connoly and Alfred W. Booraem,
on the brief), for respondent.

CARR, J.   On September 10, 1907, the defendant, the city of New
York, entered into a written contract with one Engeman for the con-
struction of reinforced concrete retaining walls on Jay and South
streets, in the borough of Richmond, in connection with a public im-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

provement known as the "St. George Ferry approach." This contract was based upon printed specifications, and on plans and drawings which were intended to be co-operative, and all of which, taken together, defined the contractual rights and duties of the parties. The contract was awarded to the lowest bidder after advertisement, as provided by statute, and the bids submitted were required to be, not in a lump sum for the work as an entirety, but based upon certain units which entered into the completion of the work. These units were set forth in printed proposals for bids, and their amount stated, but stated to be approximate only, and all bidders were called upon to verify these approximations at their own risk. Among the units so stated approximately was one as follows: "(3) 23,000 cubic yards of excavation." The plaintiff, being the lowest bidder, was awarded the contract above referred to. This contract bound the city to pay the contractor "for excavation, per cubic yard, the sum of three and $^{00}/_{100}$ dollars ($3.00)." The specifications contained a clause as to excavations as follows:

"All excavations will be figured to the toe line in the front and to the heel of the wall at the back, in perpendicular lines; the contractor to do all the necessary shoring and to include the cost of same in price bid for excavation. All excavated rocks and boulders shall be carefully placed on the heel of the base of the wall, and about drain pipes. All other excavation shall be deposited as filling back of the completed wall in such a way that the slope of the earth shall be away from the wall. This filling shall be puddled, if required by the engineer. Should there be excess of excavated materials, the contractor must remove such at his own expense."

The material to be excavated was of three kinds—ordinary top soil or loose dirt, hardpan, and rock. The cost of excavating these materials varied quite considerably, and as but one price was to be paid per cubic yard for all excavated material, whatever its character, the approximate amount of each kind of material to be excavated was necessarily taken into consideration, as a profit on one of the materials might but go to meet a loss on another.

The contract required the contractor to begin work when notified by the president of the borough of Richmond. A notice was given to begin such work on November 1, 1907, and the work was then begun. It happened, however, that the Baltimore & Ohio Railroad Company owned some lands immediately adjoining the land of the defendant. The railroad company was engaged in carrying out certain improvements of its own, which required considerable excavation, for which it used large steam shovels. Between the signing of the contract here in question and the beginning of work under it, the railroad company, without the consent of either party to this contract, and presumably by mistake, entered upon the land of the city and excavated and carried away some 1,175 cubic yards of the surface material. This matter so excavated is described in the testimony as mainly "hardpan." It is testified that the cost to the plaintiff of excavating and disposing of this material, as provided in the specifications, would have been about 50 cents a cubic yard. When the city came to make payments under its contract, it refused to pay the contractor for the material excavated and taken away by the railroad company. This action is brought by the plaintiff, which, as assignee of the contract with Engeman, carried out the work of erecting the retaining wall, to recover at

the rate of $3 a yard for the material so excavated and carried away by the railroad company. Its claim is that the act of the railroad company inured to the plaintiff's advantage by its adoption thereof, and it claims thereby performance of its contractual duty as to this excavation. In other words, it claims that it is to be considered as having done the excavation in question itself, so far as the right to the contractual compensation is concerned.

There is nothing in reason or authority which should stand in the way of the plaintiff's availing itself of the labor of the railroad company as a volunteer; but, if it adopts the railroad company's interference, it must adopt it wholly. The railroad company not only excavated the material, but it carried it away. If the plaintiff itself had excavated the material and carried it away, how could it be said to have performed the duty imposed by the specifications of depositing all the excavated material "as filling back of the completed wall in such a way that the slope of the earth shall be away from the wall"? It is true the specification also provides:

"Should there be excess of excavated materials, the contractor must remove such at his own expense."

But where the excavated material has been carried away without depositing it behind the completed wall, the burden on one claiming performance would be to show that the material so carried away was excess material in the meaning of the specifications. There was no proof offered by the plaintiff to show such a situation. The only proof appearing in the case on this question is to the contrary, namely, that thereafter the city was obliged to buy material for filling behind the completed retaining wall. The plaintiff insists, however, again and again, that there was no filling required behind the completed wall at the point of the particular excavation here in controversy. This contention, however, has no determinative effect on the point in controversy, as the specifications called for filling behind the entire retaining wall wherever it should be required for the prescribed slopes.

The plaintiff further insists that the question of performance was not at issue at the trial, under the allegations of the complaint and the denials of the answer. It contends that it alleged full performance, and the answer of the defendant did not deny the allegation of full performance; but in this contention we think the plaintiff is clearly in error. On the theory upon which the plaintiff came into court, namely, full performance as to the excavated material, it failed to make out its case. It now contends, however, that it has proved substantial performance, and should be allowed the contract price for the excavation in controversy, less such damages as the defendant may have suffered by the carrying away of the excavated material. The case is silent as to the extent and amount of the defendant's damage, and the plaintiff insists that it should be limited to the nominal amount of six cents. Where one claims the benefit of the doctrine of substantial performance, the burden is on him to show the value of the work omitted to be done; for, as was said by Vann, J., in Spence v. Ham, 163 N. Y. 220, 226, 57 N. E. 412, 413 (51 L. R. A. 238):

"He who relies upon substantial as contrasted with complete performance must prove the expense of supplying the omissions, or he fails in his proof;

for he cannot recover for full performance when a part of the contract is still unperformed. The doctrine of substantial performance necessarily includes compensation for all defects, which are not so slight and insignificant as to be safely 'overlooked on the principle of de minimis non curat lex.' Van Clief v. Van Vechten [130 N. Y. 571, 29 N. E. 1017] supra. Unsubstantial defects may be cured, but at the expense of the contractor, not of the owner. The contractor cannot recover the entire contract price when defects or omissions appear, for he must show, not only that they were unsubstantial and unintentional, but also the amount needed to make them good, so that it can be deducted from the contract price and a recovery had for the balance only. This is an essential part of substantial performance, and hence the proof should be furnished by the one who claims substantial performance."

As before stated, the number of cubic yards of excavated material which forms the subject of this controversy was 1,175 yards. The amount of excavation done under the contract, as to which there is no controversy, was 21,398 cubic yards. Assuming that all of the 1,175 yards of excavated material which was carried away by the railroad company should have been deposited as filling behind the completed wall, this amount bore such proportionate relation to the whole amount of the excavation that a claim of substantial performance may have been tenable, had the plaintiff sustained the burden of proof which such a claim imposed.

This case is not without apparent equities in favor of the plaintiff, but we are unable to interfere with the judgment of the trial court on the record now before us.

The judgment should be affirmed, with costs. All concur.